# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DEVLIN HILLMAN, *et al.*,  )
)
    *Plaintiffs*,  )
)
v.  )    Case No. 1:18-cv-999-RCL
)
AMERICAN FEDERATION OF  )
GOVERNMENT EMPLOYEES,  )
*et al.*,  )
)
    *Defendants*.  )
_____)

## MEMORANDUM OPINION

In April of 2018, plaintiffs Devlin Hillman and Tara Blunt filed suit against defendants American Federation of Government Employees ("AFGE") and Local 2741 of the American Federation of Government Employees ("Local 2741"). The Complaint initially brought three claims under the Labor-Management Reporting & Disclosure Act, 29 U.S.C. §§ 411-503 ("LMRDA"), one claim under the Labor Management Relations Act, 29 U.S.C. §§ 141-197, and two claims under D.C. common law. On January 28, 2019, the Court dismissed one of the LMRDA claims, the Labor Management Relations Act claim, and both D.C. common law claims. ECF No. 18. Both parties now seek summary judgment on the two remaining LMRDA claims (violation of process and retaliation). Upon consideration of those motions (ECF Nos. 41 & 42), oppositions (ECF Nos. 51 & 52), and replies (ECF Nos. 58 & 59), the Court will **DENY** plaintiffs' summary judgment motion (ECF No. 42) and **DENY** defendants' summary judgment motion (ECF No. 41).

## BACKGROUND[1]

AFGE is a national labor organization organized by districts, with District 14

representing the greater D.C. region. ECF No. 1 ¶¶ 19, 22. Local 2741 is affiliated with AFGE.

*Id.* at ¶ 23. Plaintiffs Devlin Hillman and Tara Blunt were members of Local 2741 who claim

that they were wrongly removed from their officer positions and wrongfully terminated as

members. Local 2741's Constitution and Bylaws state that "Civil employees in the actual service

of the District of Columbia, Department of Parks and Recreation, Washington DC, shall be

eligible for membership in this local as provided for in Article III, Section 1 of the AFGE

National Constitution." ECF No. 41-6, Exh. 9. The Constitution and Bylaws further state that

"the Local shall have full power to elect or reject eligible applicants for membership." *Id.* They

also dictate payment of membership dues, explaining that "[i]n the event payroll deductions

cease, local Shop Stewards shall make remittance of all dues and initiation fees to the Secretary

Treasurer no later than the Tuesday of the last full work week of the month." *Id.* Additionally,

they explain that "[a]ll receipts, checks, and case disbursements shall be properly recorded and

accounted for in the financial records of this local." *Id.* The duties of the Secretary Treasurer of

the Local include "keep[ing] records of all transactions" and receiving "all monies and/or dues

paid into the local and receipt thereof." *Id.*

All employees of the District of Columbia are eligible for membership in the AFGE. ECF

No. 41-7, Exh. 10. If a person is separated from government employment "without prejudice"

---

[1] Both parties have filed for summary judgment, meaning that both parties were supposed to submit a Statement of Material Facts. Defendants properly submitted a 17-page Statement of Materials Facts with record citations, and it appears that each of their 105 paragraphs contains a citation to at least one specific exhibit. In contrast, plaintiffs submitted a Statement of Material Facts in name only. Out of 245 paragraphs, approximately 219 paragraphs fail to cite any exhibits whatsoever. Perhaps plaintiffs expect the Court to examine every single exhibit to see which paragraphs are corroborated by the evidence, or maybe plaintiffs think that the Court will simply take these statements at face value despite the lack of citations. The Court will do neither of these things. Marlene Kemi Morten (plaintiffs' attorney) repeatedly showed a complete lack of respect for the discovery process, so it comes as little surprise that she flagrantly disregarded the procedural rules governing summary judgment motions.

and was a member in good standing, that person is eligible to continue membership in the Federation. *Id.* Any person separated for unjust cause from employment who was a member in good standing in any local may retain membership in the local. *Id.* Any person separated by an agency and unsuccessfully represented by the Union is eligible to retain membership if otherwise eligible for retirement. *Id.*

Both plaintiffs were AFGE members based on their employment as lifeguards at the D.C. Department of Parks and Recreation, but both were removed from service as Assistant Pool Managers for insubordination when they refused "to obtain an International Lifeguard Training Program certification." ECF No. 41-4, Exhs. 1-2. Plaintiffs appealed this decision without assistance from Local 2741, and although those appeals are still pending, they have so far been unsuccessful. Regardless of those pending appeals, plaintiffs have admitted in this case that they were removed for just cause.[2] ECF No. 41-6, Request 33. After plaintiffs were removed from government service in June of 2016, Local President David Brooks ("LP Brooks") refused to accept plaintiffs' dues on several occasions and refused to allow them entry into meetings. ECF No. 41-7, Exh. 19. Plaintiffs continued seeking assistance to pay their dues, and on September 11, 2017, National Vice President Eric Bunn ("NVP Bunn") had National Representative Nate Nelson ("NR Nelson") send two letters to LP Brooks directing him to reinstate plaintiffs because their cases were still pending on appeal and thus the question of unjust cause had not yet been fully adjudicated. ECF No. 41-7, Exh. 17. That same day, NVP Bunn agreed to accept plaintiffs' dues payments on behalf of the Local. ECF No. 41-7, Exh. 12. He also reinstated Mr. Hillman as Chief Shop Steward, a position to which he

---

[2] As explained later in this Memorandum Opinion, by failing to respond to defendants' First Set of Requests for Admissions (ECF No. 41-6), Federal Rule of Civil Procedure 36(a)(3) says that these matters are deemed admitted. *See* ECF No. 26 at 2 (granting defendants' Motion to Compel with respect to the Requests for Admissions and explaining that because plaintiffs failed to respond, those requests are deemed admitted). This includes the admission that they "were removed for just cause from employment at the D.C. Department of Parks & Recreation." ECF No. 41-6, Request 33.

had previously been elected. ECF No. 52-2, Exh. 11. According to NVP Bunn, he took these actions to correct the rogue actions of LP Brooks and to assist plaintiffs in maintaining their memberships. *Id.*

LP Brooks refused to comply and denied plaintiffs entry into the Local 2741 membership meeting on September 16, 2017. LP Brooks declared that the meeting was cancelled and locked the building where the meeting was supposed to be held, but the members reconvened the meeting outside without the Local President or the Local Vice President. ECF No. 41-5, Exh. 3. Both plaintiffs were present at this meeting, and Ms. Blunt was nominated and elected to serve as interim Local 2741 Secretary Treasurer until a new Secretary Treasurer could be duly elected and installed in April of 2018. ECF No. 41-5, Exh. 5. Upon learning that LP Brooks had continued refusing to comply with the order to reinstate plaintiffs, NVP Bunn recommended suspending LP Brooks, and National President J. David Cox issued the suspension. ECF No. 41-7, Exh. 20.

On September 23, 2017, a properly convened Executive Committee meeting was held, and Ms. Blunt was officially installed as interim Secretary Treasurer. ECF No. 41-5, Exh. 5. On September 24, 2017, Ms. Blunt wrote a letter on behalf of herself, Mr. Hillman, and Recording Secretary Ashley Harris sharply criticizing Local President Barbara Jones ("LP Jones"), who NR Nelson appointed to replace LP Brooks, for her alleged misconduct and failure to abide by the rules during the September 23, 2017 Executive Committee meeting. ECF No. 42-2, Exh. 9. This letter ended with the statement, "Your actions at the September 23 Executive Committee Meeting are reminiscent of those of David Brooks. We will not stand idly by and allow you to repeat the mistakes of the past." *Id.*

On October 1, 2017, NR Nelson informed Ms. Blunt via email that she was to be removed from her position as interim Secretary Treasurer as of October 2, 2017. ECF No. 41-7, Exh. 24. He also informed her that she needed to surrender all materials, including the keys to the Local 2741 office "and all financial documents." *Id.* The email reprimanded Ms. Blunt for her letter which "threatened the properly installed local president." *Id.* Nadine Bell was appointed to replace Ms. Blunt as Secretary Treasurer, and both plaintiffs were aware of this change. ECF No. 41-5, Exhs. 3 & 5. Plaintiffs, however, dispute the validity of this change, arguing that because Local 2741 is fully autonomous, NVP Bunn and NR Nelson had no authority to replace Ms. Blunt with Ms. Bell. ECF No. 52 at 1-2.

The AFGE National Executive Council Policy Regarding Dues Delinquencies and Good Standing was adopted on June 8, 2017 and applied to plaintiffs beginning on that same day. ECF No. 41-7, Exh. 11; ECF No. 41-6, Exh. 7. This policy states that "payment of dues is among the primary responsibilities of members towards the Union and is a primary condition to the exercise of rights within the Union," leaving locals to "establish dues structures and methods by which members must pay their dues." ECF No. 41-7, Exh. 11. The local must give a delinquent member notice, but if that local fails to do so, "that member shall be deemed to have constructive notice of his or her delinquency . . . when forty-five days have elapsed since the delinquency began." *Id.* A member who "pays dues manually is deemed to be delinquent as of the end of the time period for which he or she last paid dues." *Id.* Plaintiffs were informed on October 6, 2016, by AFGE National Office employee Syd Faisal that "Locals collect all member dues. Please provide payment to Local Treasurer or President." ECF No. 41-6, Exh. 8.

Once Ms. Blunt was removed as Secretary Treasurer, she no longer had the authority to deposit dues into the Local 2741 bank account. ECF No. 41-6, Exh. 9. Nevertheless, Ms. Blunt

5

continued to use the Local 2741 bank account number to deposit dues directly into the Local

2741 bank account for herself and Mr. Hillman from October of 2017 through January of 2018.

ECF No. 41-5, Exhs. 3 & 5. She made no notation on the deposit slips for the money orders to

indicate that they were for herself or Mr. Hillman. ECF No. 41-5, Exh. 5. She did not tell anyone

at Local 2741 or District 14 that she was making these membership dues deposits into the bank

account. *Id.* Although Ms. Blunt provided these receipts to her attorney, Marlene Kemi Morten,

neither she nor Ms. Morten provided them to anyone at Local 2741 until Ms. Blunt was asked to

show proof of her dues payments in February of 2018. *Id.* According to LP Jones, she was

initially unaware that the plaintiffs were depositing dues directly into Local 2741's bank account

during this time period. ECF No. 41-5, Exh. 4. In the hallway before the January of 2018

membership meeting, Mr. Hillman informed LP Jones that he had been self-depositing since

October of 2017, and she allegedly replied, "Oh, that was you?" ECF No. 41-5, Exh. 3. In

January of 2018, LP Jones closed the Local 2741 bank account to which plaintiffs had been

making deposits. ECF No. 41-5, Exh. 4. Mr. Hillman discovered this when he attempted to self-

deposit dues in February of 2018 and learned that the account was closed. ECF No. 41-5, Exh. 3.

On February 24, 2018, NR Nelson emailed plaintiffs and stated that if they did not pay

dues for January and February of 2018 "to the local treasurer, directly to an executive officer, or

. . . to the local's mailing address" then they were not members in good standing under the

AFGE National Executive Council Policy regarding Dues Delinquency and Good Standing. ECF

No. 41-7, Exh. 21. In this email, he informed them that it appeared they "may have attempted to

pay dues to an account that was closed" even though "the Local President specifically informed

both parties that their dues had to be paid to the local treasurer, a local officer, or the dues could

be mailed to the union office address." *Id.* Plaintiffs have admitted that LP Jones informed them

"of the proper method of submitting dues to AFGE Local 2741 during the relevant time period."

ECF No. 41-6, Request 47. According to Mr. Hillman's deposition testimony, he "can't

remember" how he paid dues from March of 2018 through July of 2018 and is "not sure how

they were being deposited." ECF No. 41-5, Exh. 3. He admits that he did not try to pay his dues

after July of 2018. *Id.* According to Ms. Blunt's testimony, she attempted to pay dues by

mailing one payment to NR Nelson at District 14 and by mailing two payments to LP Jones at

the Local's mailing address. ECF No. 41-5, Exh. 5. Ms. Blunt admits that she did not try to pay

her dues after August of 2018. *Id.*


## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). Courts must "view the evidence in the light most favorable to the nonmoving party and

draw all reasonable inferences in its favor." *Athridge v. Aetna Cas. & Sur. Co.*, 604 F.3d 625,

629 (D.C. Cir. 2010). To show that a dispute is "genuine" and defeat a summary judgment

motion, the nonmoving party must present evidence "such that a reasonable jury could return a

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If

the evidence is merely colorable, or is not significantly probative, summary judgment may be

granted." *Id.* at 249-50. A mere "scintilla of evidence in support of the plaintiff's position will be

insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."

*Id.* at 252. If, however, there are material, "genuine issues that properly can be resolved only by

a finder of fact," summary judgment is not appropriate. *Id.* at 250. When deciding a summary

judgment motion, the Court is not permitted to weigh the evidence—rather, the Court must

determine whether there is evidence to be weighed at trial. *See Abraham v. Graphic Arts Int'l Union*, 660 F.2d 811, 814 (D.C. Cir. 1981).

## ANALYSIS

For the reasons explained below, the Court will deny both plaintiffs' and defendants' motions for summary judgment.

## I. PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs' summary judgment motion is easily disposed of. As explained in Footnote 1, their Statement of Material Facts was procedurally deficient, as nearly every paragraph failed to cite any evidence whatsoever. Federal Rule of Civil Procedure ("Rule") 56 clearly states:

> [a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Both options for proving the existence of a material fact require specific record cites. Additionally, Local Rule 7(h)(1) specifically requires the statement of materials facts to "include references to the parts of the record relied on to support the statement." Although the Court *may* consider materials not specifically cited, it is only *required* to consider the cited materials. Fed. R. Civ. P. 56(c)(3). Therefore, it is not the Court's responsibility to pour through the exhibits and see if these "facts" are supported. That was plaintiffs' responsibility, and the Court will not do their work for them.

In addition to plaintiffs' failure to provide a proper Statement of Material Facts, their 9-page argument in support of their request for summary judgment is equally deficient. In those 9 pages, plaintiffs only cite one exhibit, meaning that they have once again failed to draw the Court's attention to any evidence that would be sufficient to support their claims. Furthermore, plaintiffs do not even come close to addressing all of the relevant legal arguments that the Court would need to consider before finding in their favor. Quite simply, plaintiffs are not only unable to show that no reasonable juror could find in defendants' favor, but they have failed to submit a proper summary judgment motion altogether. The Court will therefore deny their motion.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants seek summary judgment on both remaining LMRDA claims: (1) adverse actions taken against plaintiffs without process; and (2) adverse actions taken against plaintiffs in retaliation for protected activity. Defendants argue that as a matter of law, plaintiffs cannot succeed on either claim because they were no longer eligible for membership in the union at the time that defendants allegedly took these unlawful actions, and thus they did not have the rights and privileges afforded to members. A "member" of a labor organization is one who has "fulfilled the requirements for membership in such organization" and has not "voluntarily withdrawn from membership nor [] been expelled or suspended from membership after appropriate proceedings consistent with lawful provisions of the constitution and bylaws of such organization." 29 U.S.C. § 402(o). The provisions of the LMRDA upon which plaintiffs rely specifically state that "[e]very member of a labor organization shall have equal rights and privileges within such organization," 29 U.S.C. § 411(a)(1), and "[n]o member of any labor

organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues" without process, 29 U.S.C. § 411(a)(5).

Defendants make two arguments to support their contention that plaintiffs were no longer eligible for membership at the time of defendants' allegedly unlawful actions. First, they argue that because plaintiffs were no longer eligible for membership after being removed from government service, they have no claim under the LMRDA. Second, they argue that even if plaintiffs were initially eligible to remain members after being removed from government service, they automatically forfeited their memberships when they began repeatedly paying their dues improperly. The Court finds both of these arguments to be without merit.

### A. Plaintiffs' Retained Their Membership Rights After Removal from Service Because Their Appeals Challenging That Removal Were Still Pending.

It is undisputed that plaintiffs were removed from government service—specifically from the D.C. Department of Parks and Recreation—in June of 2016. Defendants interpret AFGE's National Constitution as providing only three avenues through which a member who has been removed from government service may retain membership: (1) having been separated without prejudice; (2) having been separated and then unsuccessfully represented by the union; or (3) having been separated for unjust cause. Plaintiffs do not appear to dispute this interpretation of the AFGE National Constitution. *See generally* ECF No. 52. For the reasons explained below, the Court finds that because of a specific Local 2741 provision, plaintiffs fall within the third category of persons who may retain membership after being removed from government service, despite having admitted that they were removed unjustly. Defendants' argument that plaintiffs automatically lost their memberships when they were terminated from government employment

and thus were not members when they were removed from their officer positions or memberships is thus invalid.

### 1. Plaintiffs Were Not Separated Without Prejudice.

The first way to retain membership after being removed from service is to have been separated without prejudice. ECF No. 41-7, Exh. 10. Plaintiffs clearly do not meet this requirement, as they were removed from service due to their own actions, meaning that they were removed with prejudice. ECF No. 41-4, Exhs. 1-2. Being dismissed without prejudice requires dismissal for reasons other than the employee's own conduct, such as the agency's decision to eliminate a position altogether. Plaintiffs do not appear to dispute that they were separated with prejudice. *See generally* ECF No. 52. Therefore, plaintiffs clearly do not fall within the first category.

### 2. Plaintiffs Were Not Represented by the Union.

The second way to retain membership after being removed from service is to be unsuccessfully represented by the union and otherwise eligible for retirement. ECF No. 41-6, Exh. 9. It is undisputed that plaintiffs were not represented by the union at any stage of their appeals. Rather, they have been represented by the same attorney representing them in this lawsuit: Marlene Kemi Morten. Additionally, plaintiffs do not contend that they were eligible for retirement at the time of their removal from service, and they do not argue that this second category applies to them. *See generally* ECF No. 52. Therefore, plaintiffs do not satisfy either requirement for the second category.

### 3. Although Plaintiffs Were Not Removed for Unjust Cause, Local 2741 Allows Plaintiffs to Retain Their Membership Rights While Their Appeals are Pending.

The third and final way to retain membership after being removed from service is to have been separated for "unjust cause." ECF No. 41-7, Exh. 10. Plaintiffs are still in the process of appealing their removal from government service, although every appeal thus far has resulted in a determination of just cause. Specifically, the DC Office of Employee Appeals ("DC OEA") dismissed Mr. Hillman's appeal, finding that "his failure to become certified, despite the fact that he was provided with ample time to do so and that DPR provided him with the necessary training to become certified is inexplicable." ECF No. 41-4, Exh. 1. On October 18, 2019, Judge Florence Y. Pan of the D.C. Superior Court dismissed Mr. Hillman's appeal due to a lack of jurisdiction, finding that he did not dispute that he failed to complete the certification, and thereby converted to an at-will employee for whom appeal rights do not attach at DC OEA (meaning that he could not have been terminated for unjust cause). ECF No. 41-5, Exh. 6. Similarly, on September 30, 2019, DC OEA dismissed Ms. Blunt's petition for appeal, finding that she was converted to an at-will employee for failing to maintain certification and thereby had no appeal rights at DC OEA (meaning that she could not have been terminated for unjust cause). ECF No. 41-4, Exh. 2. DC OEA also found that "the Agency met its burden of proof regarding the charge of insubordination" and "did not abuse its discretion, did not act arbitrarily and did not fail to consider relevant factors." *Id.*

Plaintiffs argue that because Mr. Hillman's appeal is still pending before the District of Columbia Court of Appeals and because Ms. Blunt's appeal is still pending before the full Board of the DC OEA, the Court can still find that they were removed unjustly. The Court disagrees for three primary reasons. First, the DC OEA and D.C. Superior Court's findings are well-reasoned and suggest that plaintiffs' removal from service was not unjust. Second, plaintiffs overlook that

12

they have the ultimate burden of proof in this case—it is their burden to prove that they were fired for unjust cause, not defendants' burden to prove that they were fired for just cause. Plaintiffs simply cannot meet this burden. Third, and perhaps most importantly, plaintiffs admitted during discovery that they were removed for just cause. As previously discussed in Footnote 2, plaintiffs failed to respond to defendants' First Set of Requests for Admissions (ECF No. 41-6). Rule 36(a)(3) clearly says that when a party fails to timely respond to a request for admission, that request is deemed admitted. The Court already issued an Order explaining that all of the requests contained in the First Set of Requests for Admissions were deemed admitted. ECF No. 26 at 2. This includes the critical admission that plaintiffs "were removed for just cause from employment at the D.C. Department of Parks & Recreation." ECF No. 41-6, Request 33. By virtue of this admission, there can be no genuine dispute of material fact as to whether plaintiffs were terminated for just cause, and the matter is deemed conclusively resolved.

Plaintiffs take issue with the Court using Rule 36(a)(3) to find that they admitted to being removed for just cause, calling such a ruling "an extreme miscarriage of justice." ECF No. 52 at 20. They ask the Court to take their "continued appeal of their termination as the best evidence that they believe their terminations were unjust." *Id.* Unfortunately for plaintiffs, Rule 36 does not care what a litigant may be arguing in another lawsuit, nor does Rule 36 consider arguments made in another lawsuit to be "the best evidence" of what that litigant believes. Rule 36 makes it abundantly clear that that if the recipient of a request for admission does not respond within 30 days (or within whatever amount of time was stipulated by the parties or ordered by the Court), that "matter is admitted." Fed. R. Civ. P. 36(a)(3). Unfortunately for plaintiffs, actions—or in this instance, inactions—have consequences. The Court already ruled that all 50 requests to which plaintiffs failed to respond are deemed admitted, and plaintiffs are bound by that ruling. Plaintiffs

13

contend that the "[t]he U.S. Constitution entitles Plaintiffs, like all litigants, the right to exhaust their appeals." ECF No. 52 at 20. Nothing in this Memorandum Opinion or the accompanying Order, however, prevents plaintiffs from doing so—after all, Rule 36 expressly states that an admission under Rule 36 "is not an admission for any other purpose and cannot be used against the party in any other proceeding." Fed. R. Civ. P. 36(b). Therefore, the Court's determination that plaintiffs have admitted to being removed for just cause is limited to this case and will not impact their separate appellate proceedings.

Despite the Court's determination that plaintiffs were removed for just cause, this is a unique situation. Because plaintiffs' appeals are still pending, and because a Rule 36 admission is not binding on a separate lawsuit, this Court's determination that plaintiffs were terminated for just cause is not dispositive of whether plaintiffs may retain membership during the pendency of their appeals. According to emails from various union representatives, Local 2741 has a procedure enabling removed members to retain their membership rights and privileges while they appeal their terminations. Notably, defendants do not appear to deny the existence of that provision. It is undisputed that plaintiffs' appeals are still pending, and it is similarly undisputed that those appeals were pending at the time when defendants allegedly violated plaintiffs' rights under the LMRDA. Therefore, even though the Court believes that plaintiffs were removed for just cause and that their appeals have little chance of success, that does not automatically end the inquiry, as plaintiffs may still be entitled to membership rights until the exhaustion of all appeals.

Plaintiffs have presented multiple pieces of evidence suggesting that Local 2741 not only has such a provision, but specifically used it to reinstate plaintiffs. In an email to Ms. Morten dated June 15, 2017, NR Nelson stated that District 14, in consultation with NVP Bunn, decided that once Mr. Hillman and Ms. Blunt paid their back dues and brought their memberships

14

current, their full membership rights would be restored. ECF No. 52-2, Exh. 1. NR Nelson

specifically referenced a "Local 2741 . . . procedure in which a terminated member can make a

request to the membership to pay their dues while the case is pending appeal." *Id.* General

Counsel for AFGE also clarified that "[u]nder some circumstances," removed members "do

have the ability to start paying dues and retain membership status, pending the result of their

appeals." ECF No. 52-2, Exh. 10. Additionally, NR Nelson's and NVP Bunn's repeated

insistence that LP Brooks reinstate plaintiffs suggests that they did have a right to retain their

memberships while their appeals were pending. Furthermore, the fact that NVP Bunn accepted

their back-dues to bring their memberships up to date starting on September 11, 2017 severely

undermines defendants' argument that plaintiffs' memberships automatically terminated when

they were removed from government service. At the summary judgment stage, the Court must

make all inferences in plaintiffs' favor. Therefore, the Court will assume (based on both the

plain language of the AFGE National Constitution and the lack of a contrary argument from

defendants) that such a local provision does not violate the AFGE National Constitution.[3]

Because it appears that plaintiffs were still entitled to remain members while their

appeals were pending, the Court will proceed to analyzing whether a reasonable jury could find

that plaintiffs were removed from their officer positions without process and/or for retaliatory

reasons. Because defendants do not contend that plaintiffs were paying dues improperly *at the*

*time when they were removed from their officer positions*, the arguments about improper dues

payments are irrelevant to whether defendants could remove plaintiffs as officers, and thus those

---

[3] The AFGE National Constitution states that a member who was terminated for unjust cause may retain membership, but it does not specify whether a member may retain membership while an appeal is pending or whether a member must be removed and then reinstated once he or she proves that the termination was unjust. Therefore, Local 2741's provision enabling someone to retain membership while an appeal is pending does not appear to violate the AFGE National Constitution on its face.

arguments can be better analyzed in a later section of this Memorandum Opinion.[4] For the

reasons stated below, a reasonable jury could find that plaintiffs were removed from their

officer positions without process and/or that plaintiffs were removed from their officer

positions for retaliatory reasons.[5]

> ### a. A Reasonable Jury Could Find That Plaintiffs Were Removed as Officers Without Process.

Plaintiffs believe that they were entitled to certain process rights before they could be

removed as officers. 29 U.S.C. § 411(a) and the AFGE Hearing Manual clearly state that

members cannot be "fined, suspended, expelled, or otherwise disciplined, except for nonpayment

of dues by such organization, or by any officer, unless such member has been (i) served with

written specific charges; (ii) given a reasonable time to prepare his defense; (iii) afforded a full

and fair trial." *See* ECF No. 52-5, Exh. 53. Although this language specifies only that *members*

are entitled to these process rights, the D.C. Circuit has directly applied these protections to

*officers* removed from their positions. *See, e.g.*, *Wildberger v. AFGE*, 86 F.3d 1188, 1190, 1193

(D.C. Circuit 1996) (determining that an AFGE officer's 29 U.S.C. § 411(a) rights could have

been violated due to how he was removed from office). It does not appear that plaintiffs were

served with written charges, given time to prepare a defense, or given a trial before being

removed as officers. Additionally, plaintiffs contend that NR Nelson lacked authority to

unilaterally remove Ms. Blunt or Mr. Hillman from their officer positions, as Local 2741 is

---

[4] Defendants argue that plaintiffs were not members when they were removed from office based on improper dues payments, but defendants admit that the improper dues payments did not start until after their removal. Therefore, it would be temporally impossible for plaintiffs to have lost their memberships based on improper dues payments at the time when they were removed as officers.

[5] Although a reasonable jury could conclude that plaintiffs were removed from their officer positions without process and/or for retaliation, under the LMRDA, plaintiffs will only be entitled to monetary damages. Because they were removed in the fall of 2017, numerous election cycles have already passed, and it would be improper to reinstate them to those positions at this point.

autonomous. Therefore, as long as the jury finds that Ms. Blunt and Mr. Hillman were properly elected to their respective positions, a jury could find in their favor on this process claim, making summary judgment for the defense inappropriate.

### b. A Reasonable Jury Could Find That Plaintiffs Were Removed as Officers for Retaliatory Reasons.

To succeed on a retaliation claim, plaintiffs must prove that: (1) they engaged in conduct or made statements that amounted to free speech protected under the LMRDA; (2) they were the subject of an adverse action; and (3) the adverse action was causally connected to their exercise of free speech. *Sheet Metal Workers v. Lynn*, 488 U.S. 347, 354 (1986). Defendants do not directly contest that the letter plaintiffs sent to LP Jones is protected under the LMRDA,[6] and it is clear as a matter of law that being removed as an officer is an adverse action. 29 U.S.C. § 411(a)(2) gives labor union members the right "to express any views, arguments, or opinions" so long as those expressions do not violate the "reasonable rules" governing conduct of members "that would interfere with [the union's] performance of its legal and contractual obligations."

Although the statute specifies that unions cannot retaliate against members for engaging in this kind of protected activity, the D.C. Circuit has clarified that this protection also extends to officers who were elected (though not to officers who were appointed). *Gilvin v. Fire*, 259 F.3d 749, 757-58 (D.C. Cir. 2001) (explaining the Supreme Court's holding in *Sheet Metal Workers* as extending this protection to elected union officials but not to appointed union officials). Mr. Hillman was reinstated to his elected position as Chief Shop Steward in September of 2017, meaning that he is entitled to protection against retaliation. Ms. Blunt's position as acting

---

[6] NR Nelson's email to Ms. Blunt (ECF No. 41-7, Exh. 23) suggests that this letter violated the union's reasonable rules of conduct, and defendants' summary judgment motion argues that Ms. Blunt was attempting to violate the Local 2741 Constitution and bylaws, but defendants do not directly state that the letter is unprotected.

Secretary Treasurer is a bit less clear. At times, the parties seem to use the terms "vote," "elect," "nominate," and "appoint" interchangeably. Because the Court must make all inferences in Ms. Blunt's favor, the Court will assume that she was elected during the September of 2017 meeting at which eleven members were present rather than merely appointed, as there is evidence that a vote occurred. In order to succeed at trial, however, she will need to convince the jury that she was not only elected to this position, but that her election was proper and in accordance with the rules. Otherwise, her claim for removal based on retaliation cannot succeed as a matter of law.

As for the nature of the letter itself, the D.C. Circuit has been clear that a "harsh, and even intemperate" letter written by an elected union officer criticizing another union officer is protected speech under the LMDRA. *Id.* at 758. The fact that the letter contained criticisms of LP Jones is, on its own, insufficient to allow defendants to remove plaintiffs from an elected position. Therefore, a reasonable jury could find that plaintiffs have established the first two elements of their retaliation claim with respect to removal from office, and the remaining issue is whether they can establish a nexus between the protected activity and adverse action.

Plaintiffs have presented numerous pieces of evidence in support of their argument that their removal was retaliatory. Defendants claim that plaintiffs were lawfully removed from their officer positions and continually state that the issue of whether plaintiffs were unlawfully removed is a mere "background fact." Such a characterization completely overlooks that the lawfulness of plaintiffs' removal from office is the precise question at the center of both the process and retaliation claims. Defendants fail to adequately address one of the most suspicious pieces of evidence: the October 1, 2017 email from NR Nelson to Ms. Blunt.

On September 24, 2017, Ms. Blunt wrote a letter on behalf of herself, Mr. Hillman and Ashley Harris to LP Jones containing numerous criticisms. It reads in part:

> . . . During the Executive Committee Meeting you violated Robert's Rules of Order
> by refusing to put to a vote a number of motions on the floor . . . If you do not
> [convene a teleconference to allow us to vote on motions that you refused to place for
> vote], we will appoint a Committee of Investigation to bring charges against you
> pursuant to Article XXIII, Section 3 of the AFGE National Constitution.

ECF No. 41-7, Exh. 25. The letter goes on to set forth numerous charges against Ms. Jones,

including: (1) refusing to allow invited legal counsel to attend the September 23 Executive

Committee Meeting as voted by the general membership; (2) instructing the Bank of America to

add Anthony Sherman as co-Treasurer and signatory on all Local 2741 bank accounts without

approval from the general membership; (3) refusing to carry out duties of the President to put to

a vote certain motions made at the Executive Committee Meeting; (4) refusing to grant Ms.

Blunt the Bank of America online access code and password to the Local 2741 office computer;

and (5) incompetence, negligence, or insubordination in the performance of official duties and/or

failure or refusal to perform duties validly assigned. The letter ends with a list of reasons why LP

Brooks was relieved of his duties, admonishing, "Your actions at the September 23 Executive

Committee Meeting are reminiscent of those of David Brooks. We will not stand idly by and

allow you to repeat the mistakes of the past." *Id.*

In response to this letter, NR Nelson sent an email to Ms. Blunt on October 1, 2017,

which reads in part:

> Ms. Blunt, please be informed that District 14 has reviewed your inappropriate
> letter . . .
>
> I find this very disturbing because it appears that you were willing to violate your
> own local bylaws in order to aid another individual for financial gain . . . We
> received information that you made every effort to appoint Devlin Hillman to the
> Vice president position without an election by the members. LP Barbara Jones
> reported that you did this on September 23, 2017 at an executive board meeting.
> You did not stop here.
>
> It is your letter dated September 24, 2017, that revealed who you are, and what you
> were trying to accomplish[.] Ms. Blunt, you are not the Secretary Treasurer for

Local 2741 because I did not install you to legally occupy that position. Therefore, you acted without authority when you sent your unprofessional letter to LP Jones . . . I can't tell you how your letter really was a huge disappointment to me.

You could have called NVP Bunn or myself for the proper advice on this issue. It is obvious that you had a different agenda.

Therefore, you are not the authorized [S]ecretary Treasurer for local 2741. On October 2, 2017, District 14 is instructing you to turn over the keys to the union office, all local 2741 property, and all financial information that include the check books to Ms[.] Barbara Jones. District 14 will be contacting you in the near future about the status of your membership reinstatement. Thank you.

ECF No. 41-7, Exh. 23.

Retaliation cases are almost always dependent upon circumstantial evidence, but this email could be viewed as direct evidence of retaliation. Defendants argue that despite the language in this email, Ms. Blunt was not retaliated against for her letter; rather, "it was her attempt to end run the Local Constitution and Bylaws that caused her removal from office."[7] ECF No. 41-2 at 32. Whether plaintiffs were removed for the criticism in the letter or for an attempt to evade the rules established by Local 2741, however, is not for a Court to decide. Because there is evidence to support both plaintiffs' and defendants' arguments about why they were removed, a jury must have an opportunity to weigh the evidence. Additionally, if a jury finds that defendants violated plaintiffs' process rights (meaning that they failed to follow their own established procedures in removing plaintiffs from office), that could be viewed as evidence of retaliation. A reasonable jury could find a nexus between the protected activity and the adverse action, meaning that it would be improper to grant summary judgment for the defense with respect to plaintiffs' claim that their removal from office was retaliatory.

---

[7] Notably, defendants' summary judgment motion contains no direct explanation for why Mr. Hillman was removed as Chief Shop Steward. *See generally* ECF No. 41-2.

**B. Plaintiffs' Self-Depositing of Dues Did Not Automatically Terminate Their Membership Rights.**

Defendants further argue that even if plaintiffs' membership rights were not terminated upon their removal from government service, plaintiffs forfeited their memberships by selecting an improper method of paying dues. It is true that plaintiffs were improperly self-depositing dues without notifying Local 2741, which made it appear as if they were not paying dues at all. Although failure to pay dues properly provided grounds for terminating plaintiffs' memberships, it did not automatically terminate their memberships, meaning that they retained their rights to process and freedom from retaliation. As explained below, a reasonable jury could find that defendants violated the 45-day rule. A reasonable jury could also find that the improper payments were mere pretext and that their memberships were actually terminated for retaliatory purposes. Therefore, the Court will deny defendants' motion for summary judgment with respect to the termination of plaintiffs' memberships.

### 1. A Reasonable Jury Could Find That Plaintiffs' Memberships Were Terminated Without Process.

As previously explained, plaintiffs were supposed to pay dues to the Local Treasurer or Local President, yet they self-deposited dues instead. Although the LMRDA and the AFGE Hearing Manual for Internal Disciplinary Trials generally require written charges, reasonable time to prepare a defense, and a trial before members can be expelled, these requirements are inapplicable when members are expelled "for nonpayment of dues." ECF No. 52-5, Exh. 53; *see Murray v. Amalgamated Transit Union*, 2014 U.S. Dist. LEXIS 185448, at \*20 (D.D.C. Dec. 19, 2014). Therefore, defendants did not need to provide plaintiffs with written charges, reasonable time to prepare a defense, or a trial before terminating their memberships for failure to pay dues properly.

Local 2741 is, however, required to give a delinquent member notice of his or her

delinquency, but if Local 2741 does not provide such notice, "that member shall be deemed to

have constructive notice of his or her delinquency . . . when forty-five days have elapsed since

the delinquency began." ECF No. 41-7, Exh. 11. Plaintiffs' memberships were reinstated in

September of 2017 after the situation with LP Brooks was resolved, but it is unclear when

exactly those membership rights were terminated again. Plaintiffs do cite the October 21, 2017

email from NR Nelson in which he suddenly reversed course and told them that they were only

"partially reinstated members." ECF No. 52-4, Exh. 48.[8] Plaintiffs are correct that the AFGE

National Constitution does not mention the existence of a partial member status, and neither

party has identified any other provision that would allow plaintiffs to be treated as partial

members after already being reinstated with "full membership rights." ECF No. 52-2, Exh. 1. It

also appears that plaintiffs were unable to access the union website portal, which is a basic

membership benefit. Plaintiffs were ultimately permitted to attend the October of 2017 member

meeting, but they were not allowed to fully participate. There is thus a question of fact as to

whether NR Nelson's October of 2017 email actually terminated their memberships, or

whether the termination occurred at a later point (perhaps sometime after the 45-day rule had

been satisfied).

Because the Court must make all inferences in plaintiffs' favor, the Court will assume that

plaintiffs' membership rights were terminated based on this October 21, 2017 email. Of course, it

will be plaintiffs' burden to prove at trial that their membership rights were actually terminated. It

will also be their burden to prove that their memberships were terminated less than 45 days after

---

[8] At another point in their argument, however, plaintiffs suddenly assert (without any citation) that NR Nelson terminated their memberships on October 1, 2017. The Court has no idea where that conflicting date is coming from.

they became delinquent. When drawing all inferences in plaintiffs' favor, however, a reasonable jury could find that their process rights (specifically the 45-day rule) were violated.

In their opposition, plaintiffs cite no other provision of the LMRDA, the AFGE National Constitution, or the Local 2741 Constitution that would entitle them to additional process rights, so if defendants did not violate the 45-day rule, then there can be no process violation. Nevertheless, plaintiffs argue that in addition to the violation of the 45-day rule, defendants also terminated their memberships without proper cause. The Court is skeptical about whether this argument constitutes a true "process" claim, but either way, this argument cannot succeed. Plaintiffs contend that if either one of them was improperly removed from an officer position,[9] then they were paying dues properly from October of 2017 onwards, as they were the rightful officers with the authority to deposit dues. This argument is not only extremely attenuated, but also illogical. Even if they were wrongfully removed, they were still *removed*. Both plaintiffs admitted during their depositions that in October of 2017, Ms. Blunt was removed as Secretary Treasurer and replaced with Ms. Bell. *See* ECF No. 41-5, Exhs. 3 & 5. Plaintiffs maintain that Ms. Blunt was improperly removed and thus they did not view Ms. Bell as the legitimate Secretary Treasurer. Plaintiffs also maintain that Mr. Hillman was improperly removed as the Chief Shop Steward and thus they still viewed him as the proper Chief Shop Steward. Plaintiffs contend that NR Nelson lacked authority to unilaterally remove Ms. Blunt or Mr. Hillman from their officer positions, and they similarly question how NR Nelson could replace Ms. Blunt with Ms. Bell, who was not approved by the Executive Board.

---

[9] Plaintiffs argue that "[d]efendants have offered no documentary or testamentary evidence that Ms. Blunt was not the lawful Secretary Treasurer" or that the "removal of Dev Hillman" as Chief Shop Steward "was lawful." ECF No. 52 at 22. This statement, however, fundamentally misunderstands that although defendants have the burden of proving that they are entitled to summary judgment, it was plaintiffs' responsibility to bring forth evidence sufficient for a reasonable jury to find that Ms. Blunt remained the Secretary Treasurer and/or that Mr. Hillman remained the Chief Shop Steward. It is not and never has been defendants' responsibility to *disprove* these facts.

Regardless of whether plaintiffs were removed without process or for retaliatory reasons, however, the fact remains that they were still *removed*. By continuing to have Ms. Blunt deposit their dues, they circumvented the rules governing dues payments. No level of the union had any formal record of plaintiffs paying their dues during that time period because self-depositing was not recognized as a legitimate form of payment. Plaintiffs do not contend that any other member of Local 2741 attempted to pay dues through Ms. Blunt or Mr. Hillman. If the Court were to find that plaintiffs properly paid their dues, it would also be finding that anyone who paid dues through Ms. Bell did so improperly. Plaintiffs contend that there is no reason why they would "'secretly' pay money to AFGE," equating defendants' argument about self-depositing to an argument that plaintiffs "loved the union so much that they treated it like a secret Santa." ECF No. 51 at 15. Plaintiffs' snide remarks are not only disrespectful, but largely irrelevant. It does not matter *why* plaintiffs paid dues improperly—what matters is that they paid dues improperly. Therefore, plaintiffs' arguments that they paid dues properly must fail as a matter of law; however, because there is a chance that a reasonable jury will find that defendants violated the 45-day rule, granting summary judgment for the defense on this claim would be inappropriate.

## 2. A Reasonably Jury Could Find That Defendants Terminated Plaintiffs' Memberships for Retaliatory Purposes.

It was not until February of 2018—when plaintiffs were denied entry to a Local 2741 meeting because their names were not on the roster—that they informed LP Jones that they had been self-depositing dues. Although the failure to comply with basic membership requirements certainly *provides grounds* for removing someone from the union, it does not *automatically terminate* membership rights. *See, e.g.*, *Solis v. AFGE*, 763 F. Supp. 2d 154, 164 (D.D.C. 2011) (finding that although AFGE could have taken appropriate steps to terminate the plaintiff's

membership for failure to pay proper dues, "no such action was taken," and thus he retained all

of his membership rights until he was formally terminated). This means that even though

plaintiffs had been paying dues improperly, defendants still could not terminate their

memberships for retaliatory reasons. Therefore, although defendants had a right to remove

plaintiffs based on improper payment of dues, the Court must determine whether a reasonable

jury could find that they were actually removed for another, impermissible reason. Based on the

available evidence, a reasonable jury could find that improper payment of dues was pretext for

retaliation.[10]

A reasonable jury could find that defendants' memberships were terminated for retaliatory

purposes. In addition to the evidence of retaliation discussed above, plaintiffs have brought forth a

February 24th, 2018 email in which NR Nelson told plaintiffs, "If you have proof that your dues for

January and February 2018 were deposited to Local 2741 current bank account number, then we do

not have a problem . . . I want to be fair with you." ECF No. 52-6, Exh. 57. This wording could

suggest that defendants were not actually concerned with whether plaintiffs were self-depositing

dues, which could lead a reasonable juror to question why they were truly removed as members. This

wording could also suggest that there were no longer any issues with the dues payments that were

self-deposited prior to January of 2018. Additionally, plaintiffs have brought forth emails in which

they claim that they did provide proof of their payments for January and February of 2018. In light of

this documentary evidence, a reasonable jury could find that defendants' real reason for terminating

their memberships was not their improper payment of dues, but rather retaliation. The timing is also

---

[10]The legal standard for retaliation is the same as the one set forth in the Section of this Memorandum Opinion
discussing whether plaintiffs were removed as officers for retaliatory purposes. Again, a jury could find that the
letter constitutes protected activity under the LMRDA, and termination of membership is undoubtedly an
adverse action.

suspicious—if the termination of their memberships did occur on October 21, 2017 (as the email from NR Nelson suggests), that was only a month after plaintiffs sent LP Jones the critical letter, which could help establish the required nexus. Furthermore, if a jury were to find that defendants removed plaintiffs from office for retaliatory reasons, that could suggest that defendants terminated their memberships for the same retaliatory reasons.

Of course, unlike plaintiffs' removal from office, their removal from the union itself occurred after they began paying their dues improperly. As previously explained, failure to pay dues properly is a legitimate ground for removal, and defendants claim that this is why plaintiffs were removed. When there is "some evidence that the reason for removal . . . was permissible and some evidence that the reason was impermissible, the question [of] whether protected activities were a cause for the removal must be resolved by a trier of fact." *Bastani v. AFGE*, 2019 U.S. Dist. LEXIS 191388, *17 (D.D.C. Nov. 5, 2019) (quoting *Lamb v. Miller*, 660 F.2d 792, 794 (D.C. Cir. 1981)). A reasonable jury may very well find that plaintiffs' failure to pay dues properly was the real reason for their removal from the union, but if there is a possibility (no matter how small) that a reasonable jury could find the improper payments to be mere pretext for retaliation, then the Court cannot grant summary judgment. Resolving this issue will involve questions of witness credibility and the weight that should be afforded to various pieces of documentary evidence. The Court is not permitted to answer these questions, as only a jury may make determinations about witness credibility and the weight of documentary evidence. Therefore, the Court must deny defendants' request for summary judgment with respect to plaintiffs' claim that termination of their memberships was retaliatory.

**C. To the Extent That a Jury Finds in Plaintiffs' Favor on Their Process
and Retaliation Claims, AFGE National is Liable.**

AFGE National maintains that it is not liable for the actions of Local 2741 and should be

dismissed as a party. AFGE National first argues that it cannot be held liable for LP Brooks'

actions and points out that it intervened to remove LP Brooks. This argument, however,

completely overlooks that plaintiffs' two remaining claims are not based on the actions of LP

Brooks. Additionally, AFGE National contends that it is not liable for the actions of Local 2741

because Local 2741 is fully autonomous. AFGE National's argument on this point conveniently

makes no mention of the fact that it was *National* Representative Nelson who sent the email

removing Ms. Blunt from her officer position, meaning that AFGE National could certainly be

held liable if a jury finds that removal violated process or was based on retaliation. Similarly, NR

Nelson involved himself with plaintiffs' membership terminations when he sent the October of

2017 email saying that they were only "partial members." He further involved himself by saying

that there would be "no problem" with their dues payments if they could show proof that their

dues had been deposited. ECF No. 52-6, Exh. 57. This means that AFGE National could also be

liable if a jury finds that plaintiffs' memberships were terminated for retaliatory reasons.

Essentially, NR Nelson's actions show that AFGE National was directly involved in the

underlying allegations that form the basis for plaintiffs' process and retaliation claims, and

AFGE National is certainly liable for the official actions of its own National Representative. *See,*

*e.g.*, *Conejo v. AFGE*, 377 F. Supp. 3d 16, 28 (D.D.C. 2019) (noting that NR Nelson is AFGE

National's agent and thus AFGE National can be held liable for his official actions) (Lamberth,

J.). AFGE National (through NR Nelson) cannot reach down and involve itself with plaintiffs'

removal from office and membership terminations and then evade liability by claiming that

Local 2741 is a fully autonomous organization. Therefore, Court will not dismiss AFGE National from this case.

## CONCLUSION

Based on the foregoing, the Court will **DENY** plaintiffs' motion for summary judgment (ECF No. 41) and **DENY** defendants' motion for summary judgment (ECF No. 42).

A separate Order accompanies this Memorandum Opinion.

Date: <u>June 29, 2020</u>

Royce C. Lamberth
United States District Judge